IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Grover William Chapman, ) | C/A No.: 1:13-848-MGL-SVH |
| Plaintiff, ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| Defendant. ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

   A.    Procedural History

On October 4, 2013, Plaintiff filed applications for DIB and SSI in which he alleged his disability began on October 1, 2009. Tr. at 143–53. His applications were

denied initially and upon reconsideration. Tr. at 120–21, 124–25. On February 1, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Paul C. Armitage. Tr. at 38–77 (Hr'g Tr.). The ALJ issued an unfavorable decision on March 23, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 17–33. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on March 29, 2013. [Entry #1].

  B. Plaintiff's Background and Medical History

    1. Background

Plaintiff was 50 years old at the time of the hearing. Tr. at 68, 143. He completed high school. Tr. at 44. His past relevant work ("PRW") was as a janitor/cleaner and machine operator. Tr. at 70. He alleges he has been unable to work since October 1, 2009. Tr. at 143.

    2. Medical History

Plaintiff was in a motorcycle accident in 1997 and injured his hip. Tr. at 235. The record contains no medical records prior to a November 2010 consultative examination related to Plaintiff's application for disability benefits.

Plaintiff saw Dr. Terrell Stone in November 2010 for the consultative examination. Tr. at 235. Plaintiff stated that he was unable to work because of problems with low back pain. *Id.* He said he woke up two or three times per night with pain and could not sit for more than 15 minutes before getting up to relieve his back pain. *Id.* He

denied any other medical problems and specifically denied significant headaches, mental illness, or significant depression. Tr. at 235–36. He reported a history of a lazy eye as a child, but his corrected vision was 20/15 and he stated that he could read with his glasses. Tr. at 236. His physical examination revealed mild lateral deviation of the left eye, tenderness in the spine, difficulty with straight leg raise, mildly hyperreflexive deep tendon reflexes, considerable stiffness and pain, and slow movement on and off the examination table. Tr. at 236. Plaintiff said he took one or two Advil per day to control his back pain and that it provided "some relief." Tr. at 235. Dr. Stone noted that he had some concerns about whether or not Plaintiff's tingling and weakness in the lower extremities could be spinal claudication secondary to lumbrosacral spinal stenosis. Tr. at 237. Dr. Stone diagnosed chronic low back pain, opined that Plaintiff's pain would prevent him from doing his prior heavy physical labor, and recommended radiographs and an orthopedic consultation. *Id.*

In a December 2010 state medical review, Dr. Dale Van Slooten concluded Plaintiff could perform medium work with occasional climbing of ladders, ropes, and scaffolds, and frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. Tr. at 238–45.

The earliest regular medical record in the file is dated January 17, 2011, when Plaintiff visited the Samaritan Health Clinic. Tr. at 250. He complained of back pain, shoulder pain, and foot numbness. *Id.* On examination, Plaintiff's gait was slow, but normal. *Id.* The doctor noted no other abnormalities, assessed hypertension, and ordered imagining of Plaintiff's back. *Id.* Thoracic spine x-rays revealed "moderate degenerative

changes," and lumbar spine x-rays showed "mild degenerative changes." Tr. at 247, 248. At a follow-up visit on January 26, 2011, the physician noted the mild degenerative changes on Plaintiff's x-rays and that medication had improved Plaintiff's blood pressure. Tr. at 249. The doctor advised Plaintiff to return in four to six months for a blood pressure follow-up. *Id.*

In March 2011, state-agency consultant Dr. Matthew Fox concluded Plaintiff could do medium work with the same postural limitations identified by Dr. Van Slooten. Tr. at 254–61.

In August 2011, Plaintiff visited a new doctor at New Horizon Family Health Services. Tr. at 264. He complained of finger and foot numbness, and back and shoulder pain. *Id.* The doctor noted that "at the end of the visit it emerged pt. wanted me to fill out forms to help him get 'disability.'" *Id.* The doctor explained that he did not do disability evaluations, but that Plaintiff's lawyer was welcome to request the medical records. *Id.* Plaintiff was diagnosed with chronic back pain, peripheral neuropathy, and hypertension. *Id.*

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

            a.    Plaintiff's Testimony

At the hearing on February 1, 2012, Plaintiff testified that he last worked as a machine operator in 2009, but that he continued looking for work and collecting unemployment insurance in 2010. Tr. at 45, 60–61. He stated that he was involved in a motorcycle accident in 1997 that resulted in a broken leg and a broken hip. Tr. at 47. He

stated that his allegedly disabling pain came about one day while he was working on his truck. Tr. at 53–54. He said that he could stand with reasonable comfort for five minutes, sit about 10 minutes before his legs started feeling numb, and lift "a milk jug." Tr. at 48. He also said he could not reach above his head. Tr. at 51, 57.

Regarding daily activities, Plaintiff said he could groom himself, dress himself, and bathe, but that it took "twice as long as . . . a normal person." Tr. at 49. He testified he could not easily mop, sweep, vacuum, or wash dishes due to his leg and back pain. Tr. at 49–50. He stated he has difficulty bending and twisting and has serious pain when he tries to pick something up off the floor. Tr. at 56. He said he has a driver's license, but rarely drives because of the numbness in his feet. Tr. at 52–53.

Plaintiff stated that his pain extended from the middle of his back down to his feet. Tr. at 50. He said he has numbness the full length of his legs. *Id.* He stated that he walks around to reduce numbness or pain. Tr. at 55. He testified that if walking does not relieve his pain, he finds a bed and lies down. *Id.* He said he lies down about once every hour during the day. Tr. at 55–56. He stated that his high blood pressure makes him light headed and unstable at least once a day. Tr. at 58–59.

b.     Vocational Expert Testimony

Vocational Expert ("VE") William Stewart reviewed the record and testified at the hearing. Tr. at 68. The VE categorized Plaintiff's PRW as a janitor/cleaner as medium work and as a machine operator as medium or heavy work. Tr. at 70. The ALJ described a hypothetical individual of Plaintiff's vocational profile who had degenerative changes to his back and complaints about his legs and who was limited to sedentary work;

5

required a sit/stand option; could do simple, repetitive tasks and some detailed tasks; could not climb, twist, bend to the floor, or work with his arms above his head. Tr. at 70. The ALJ noted that such an individual could not perform Plaintiff's PRW. Tr. at 70–71. The VE testified that the hypothetical individual could perform the jobs of table worker, bench hand worker, and machine tender. Tr. at 71. The ALJ then further limited the hypothetical individual to lying down more than twice a day for at least 45 minutes at a time to relieve pain. Tr. at 71–72. The VE stated that such an individual could not perform any job existing in the national economy. Tr. at 72.

    2.  The ALJ's Findings

In his decision dated March 23, 2012, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
2. The claimant has not engaged in substantial gainful activity since October 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, history of injuries from a remote motorcycle accident, including fractures of the leg, and degenerative joint disease of the shoulders (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could do simple, repetitive tasks and some detailed tasks. The claimant could not climb, bend to the floor, twist, or raise his arms overhead.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6

7.  The claimant was born on November 7, 1963 and was 45 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 19–33.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)  the ALJ failed to adequately consider Plaintiff's impairments; and

2)  the ALJ failed to conduct a proper credibility analysis.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

7

>   the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b), Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

       2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g).

9

The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    The ALJ properly considered Plaintiff's impairments.

Plaintiff asserts that the ALJ failed to properly consider the following alleged impairments: mental impairment, osteoarthritis of the shoulders, peripheral neuropathy,

headaches with vision difficulties and balance problems, and possible spinal claudication secondary to lumbar spinal stenosis. [Entry #16 at 4–5]. The Commissioner responds that the ALJ's consideration of Plaintiff's impairments was proper. [Entry #18 at 7–10].

                a.        Mental Impairments

Plaintiff contends that based on medical evidence and testimony showing he had mental/emotional problems, the ALJ should have ordered a consultative mental examination. [Entry #16 at 4]. Plaintiff fails to cite to the evidence to which he refers. At his November 2010 consultative examination with Dr. Stone, Plaintiff denied a history of mental illness or significant depression. Tr. at 236. The few other medical records before the court do not document any mental impairment. Likewise, Plaintiff failed to testify to any mental impairment at his administrative hearing. The only reference to a mental impairment is in a disability report Plaintiff completed after his reconsideration determination. He stated he was "very depressed" and had difficulty concentrating and sleeping because of his pain. Tr. at 224, 226. The ALJ noted this statement in his decision, but subsequently found Plaintiff not fully credible. Tr. at 22. The ALJ stated that Plaintiff had not been diagnosed with a mental impairment, taken psychotropic or anxiolytic medications, or required psychiatric hospitalization. Tr. at 26.

The undersigned, therefore, recommends a finding that the ALJ was not obligated to provide a mental consultative examination to Plaintiff because the record contained no support for Plaintiff's alleged mental impairments. *See Bishop v. Barnhart*, 78 Fed. Appx. 265, 268 (4th Cir. 2003) (noting that the ALJ has discretion in deciding whether to

order a consultative examination and that one is only required when the evidence as a whole is insufficient to support a decision).

                b.      Shoulder impairment

Plaintiff next asserts that although the ALJ recognized his severe shoulder problem, the ALJ failed to analyze the condition, its effects, or how the related pain affects Plaintiff's RFC. [Entry #16 at 4]. In his decision, the ALJ referenced Plaintiff's testimony that he could not reach above shoulder level because of pain and numbness. Tr. at 22. Based on Plaintiff's alleged shoulder problems, the ALJ limited Plaintiff to sedentary work with additional limitations on reaching overhead. Tr. at 23. Because the ALJ fully accepted Plaintiff's alleged shoulder-related restrictions, the undersigned recommends a finding that any error by the ALJ in analyzing the condition was harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error").

                c.      Alleged neuropathy

Plaintiff alleges that the ALJ erred in failing to "consider the severity of claimant's peripheral neuropathy" as noted in the August 2011 record from New Horizon Family Health Services (Tr. at 264). [Entry #16 at 4]. Plaintiff further alleges that the ALJ did not consider whether Plaintiff "may be developing a significant neurological condition." *Id.* In his decision, the ALJ noted that Plaintiff had not specifically alleged disability to peripheral neuropathy and further noted that the diagnosing provider did not explain the basis for his assessment. Tr. at 20. Because Plaintiff's argument rests on a single

12

diagnosis that is unsupported by objective evidence, the undersigned recommends a finding that the ALJ did not err in his treatment of Plaintiff's alleged neuropathy. Furthermore, it is Plaintiff's burden to show he has a medically determinable impairment, and that the impairment is disabling. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Here, he has not presented evidence sufficient to meet that burden.

          d.      Alleged headaches, vision problems, and balance difficulty

Plaintiff alleges that the ALJ failed to analyze his "headaches with vision difficulties and balance problems." [Entry #4 at 5]. At his consultative examination with Dr. Stone, Plaintiff denied significant headaches. Tr. at 235. He reported a history of a lazy eye as a child, but his corrected vision was 20/15 and he stated that he could read with his glasses. Tr. at 236. His medical records do not document any complaints of headaches or balance problems. Because the record lacks objective medical evidence of these alleged conditions and Plaintiff has failed to explain how further consideration of them would have altered the ALJ's decision, the undersigned recommends a finding that any error by the ALJ in evaluating them was harmless. *See Mickles*, 29 F.3d at 921.

          e.      Possible spinal claudication secondary to lumbar spinal stenosis

Plaintiff next asserts that because Dr. Stone noted concern regarding possible spinal claudication secondary to lumbrosacral spinal stenosis and recommended an MRI, the ALJ should have ordered an MRI and ordered a consultative examination related to this potential diagnosis. Tr. at 237. However, the ALJ noted that the x-rays taken after Dr. Stone's examination revealed only mild to moderate degenerative changes. Tr. at 24.

13

The ALJ further noted that Plaintiff's treating doctors never referred him to an orthopedist and that Dr. Fox relied on the x-ray evidence in rendering his opinion. Tr. at 25, 27. Because Dr. Stone's recommendation of an MRI pre-dated the x-rays showing mild to moderate degenerative changes and no other provider recommended an MRI, the undersigned recommends a finding that the ALJ had a sufficient basis to render his decision and was not required to order additional testing. *See Bishop*, 78 Fed. Appx. at 268.

2. The ALJ's credibility analysis is supported by substantial evidence.

Plaintiff also contends that the ALJ erred in his credibility assessment because he (1) used boilerplate language in his credibility determination, (2) failed to properly support his finding at step one of the credibility analysis, (3) failed to adequately consider Dr. Stone's opinion that Plaintiff could not perform his PRW, and (4) impermissibly demanded objective proof of Plaintiff's pain. [Entry #16 at 5–9].

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p; *Craig*, 76 F.3d 585, 591–96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's

14

pain, and the extent to which it affects [his] ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

If an ALJ rejects a claimant's testimony about his pain or physical condition, the ALJ must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, ¶ 5. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than

15

treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process. *See Craig*, 76 F.3d at 591–96. The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms he alleged, but determined that Plaintiff's testimony "concerning the intensity, persistence and limiting effects" of his symptoms was "not entirely credible to the extent" the testimony was inconsistent with the ALJ's determination of his RFC. Tr. at 22.

The ALJ went on to provide numerous reasons for discounting Plaintiff's credibility including: (1) although Plaintiff alleged disability beginning in October 2009, he did not seek medical treatment until January 2011; (2) he never required any emergent care or hospitalization; (3) his hypertension improved with medication; (4) the objective medical evidence demonstrates only mild to moderate musculoskeletal or neurological problems; (5) the August 2011 medical record indicates that at least some motivation for Plaintiff's visit involved his desire to obtain disability benefits; (6) he has not sought additional treatment since August 2011; (7) he inconsistently claimed limitations due to headaches, vision problems, joint pain and swelling, depression, stress, hand problems and right knuckle problems; (8) the examination and treatment notes do not contain abnormal clinical signs to support these claimed limitations; (9) Plaintiff continued accepting unemployment benefits and looking for work after his alleged onset date. Tr.

16

at 25–26, 28.  Based on the foregoing, the undersigned recommends a finding that the ALJ's credibility determination is supported by substantial evidence.

The specific allegations of error that Plaintiff alleges do not warrant remand. While the ALJ used boilerplate language in his decision, is not error to do so unless he fails to provide an explanation in support of the finding.  *See McFadden v. Astrue*, C/A No. 9:11–1087, 2012 U.S. Dist. LEXIS 113845, at *2–3 (D.S.C. Aug. 14, 2012).  Here, the ALJ provided concrete reasons for his credibility determination and did not, as Plaintiff argues, merely rely on boilerplate language.

Likewise, the ALJ's alleged failure to adequately perform step one of the credibility analysis does not warrant remand.  At step one, the ALJ found in Plaintiff's favor by stating that his impairments could reasonably be expected to cause some of the symptoms he alleged.  The ALJ then went on to evaluate the intensity and persistence of Plaintiff's pain and the extent to which it affects his ability to work.  Because the ALJ proceeded to step two of the credibility analysis, Plaintiff has demonstrated no harm associated with any error in the step one finding.  Consequently, the undersigned recommends that, to the extent the ALJ erred at step one of the analysis, any such error was harmless.  *See Mickles*, 29 F.3d at 921.

Plaintiff next asserts that the ALJ did not adequately consider Dr. Stone's opinion that "*the amount of pain and discomfort* [Plaintiff] has precludes any physical labor." [Entry #16 at 7 (emphasis in original)].  Dr. Stone opined that Plaintiff's pain would prevent him from doing his prior heavy physical labor. Tr. at 237.  In accordance with that opinion, the ALJ limited Plaintiff to sedentary work.  Tr. at 21.  Therefore, because

17

there is no conflict between the ALJ's decision and Dr. Stone's opinion, the undersigned recommends a finding that the ALJ properly considered the opinion.

Finally, Plaintiff asserts that the ALJ impermissibly demanded objective proof of Plaintiff's pain. [Entry #16 at 8]. He bases this assertion on the ALJ's finding that while the x-rays in the record documented mild to moderate degenerative changes, they were inconclusive as to whether there may be disc space narrowing at some of the lower levels of the spine. *Id.*; *see also* Tr. at 20. Plaintiff's argument is unavailing. The radiography report at issue provides, "There may be disc space narrowing at some of the lower levels." Tr. at 248. The undersigned agrees with the ALJ that this language is inconclusive as to whether disc space narrowing was actually present. Thus, the ALJ's statement on that point was not in error. In addition, Plaintiff's general argument that the ALJ required objective proof of pain is belied by the ALJ's decision to limit Plaintiff to sedentary work in spite of evidence of only mild to moderate degenerative changes on the x-rays. To the extent that Plaintiff suggests the ALJ selectively accepted and rejected the medical evidence, he fails to identify any evidence that the ALJ rejected without good reason.

For the foregoing reasons, the undersigned recommends a finding that the ALJ properly evaluated Plaintiff's credibility and that his determination is supported by substantial evidence.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and

18

law.  Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

    IT IS SO RECOMMENDED.

April 15, 2014                                      Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).